RICHARD E. BROMLEY (SBN 156260)
rbromley@constangy.com
JEFFREY E. FIELDS (SBN 295276)
jfields@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone:  (310) 909-7775
Facsimile:  (424) 465-6630

Attorneys for Defendant
HERTZ LOCAL EDITION CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| KATHERINE MAI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>HERTZ LOCAL EDITION CORPORATION, a Delaware Corporation, Cindy Doan, an individual, and DOES 1 through 20, inclusive, | Case No.  **8:20-cv-00720**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION); DECLARATION OF JOHN CONCEPCION; EXHIBITS** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF KATHERINE MAI AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Hertz Local Edition Corp. ("HLE" or "Defendant") files this Notice of Removal.  This action is properly removed pursuant to 28 U.S.C. sections 1332, 1441, and 1446 because of the diversity of citizenship between the parties.

1

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)

In compliance with 28 U.S.C. § 1446(a), Defendant asserts the following grounds for removal:

1.    On or about February 24, 2020, Plaintiff Katherine Mai ("Plaintiff") commenced the aforementioned action against Defendant by filing a Complaint in the Superior Court of the State of California, County of Orange, entitled *Katherine Mai v. Hertz Local Edition Corporation, et al.,* Case No. 30-2020-01134096-CU-WT-CJC (hereinafter the "State Court Action").  True and correct copies of the Summons and Complaint for Damages ("Complaint"), along with the papers which accompanied the Complaint, are attached hereto as **Exhibit A**.  Pursuant to California Code of Civil Procedure Section 415.40, service on Defendant's agent for service of process was effective on March 12, 2020.  That was the first time any defendant was served with the State Court Action.[1]

2.    Plaintiff's Complaint alleges 12 claims:

1) California Fair Employment and Housing Act ("FEHA") Violations Based Upon Sex Discrimination;

2) FEHA Violations Based Upon Pregnancy Discrimination;

3) Failure to Grant Pregnancy Leave in Violation of the Pregnancy Discrimination Law;

4) FEHA Violations Based Upon Disability Discrimination;

5) FEHA Violations Based Upon Retaliation;

6) Violations of Business and Professions Code § 17200 *et seq.*;

7) Failure to Provide Reasonable Accommodations in Violation of Government Code §§ 12940 *et seq.*;

8) Failure to Engage in a Good Faith Interactive Process in Violation of Government Code §§ 12940 *et seq.*;

---

[1] Individual Defendant Cindy Doan has not been served.

2

9) Hostile Work Environment in Violation of Government Code §§ 12940 *et seq.*;

10) Wrongful Termination in Violation of Labor Code § 1102.5;

11) Wrongful Termination in Violation of Public Policy; and

12) Intentional infliction of emotional distress.

3. Plaintiff's First through Ninth and her 11th claims are alleged against Defendant HLE and Doe Defendants. Plaintiff's 10th and 12th claims are alleged against All Defendants, *i.e.*, HLE, Cindy Doan ("Doan"), and Doe Defendants. As explained below, Doe Defendants are to be disregarded for purposes of determining diversity.

4. On April 6, 2020, Defendant filed in the State Court Action its Answer to the Complaint, as required by the California Code of Civil Procedure. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit B**. To Defendant's knowledge, the documents described above in paragraphs 1, 2, and 3 constitute all of the state court pleadings, process, and orders to date.

5. This Notice is timely filed in that it is filed within thirty (30) days of the first service of the Summons and Complaint on the defendants in this action. *See* 28 U.S.C. § 1446(b).

6. Defendant will serve written notice of the filing of this Notice of Removal to Plaintiff as required by 28 U.S.C. § 1446(d) and will file a Notice of Removal with the clerk of the Superior Court of the State of California in and for the County of Los Angeles, as further required by that statute.

**Removal Based on Diversity Jurisdiction**

7. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1), and it may be removed to this Court pursuant to 28 U.S.C. § 1441(b). Specifically, this action involves citizens of different states and complete diversity. The amount in controversy exceeds the sum of $75,000, exclusive of interest and

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)

costs, because Plaintiff alleges that she suffered compensatory damages, punitive damages, and attorneys' fees.

8. Defendant is informed, believes and alleges, based upon the allegations in Plaintiff's Complaint, based on the information in Defendant's records, and based on its independent investigation, that Plaintiff was, and still is, a citizen of the State of California. See **Exhibit A** (Complaint at ¶ 2).

9. HLE is a Delaware corporation with its corporate headquarters and principal place of business in the State of Florida. HLE was not and is not a citizen of the State of California. HLE also is headquartered in Estero, Florida. HLE's high-ranking officers maintain their offices in Estero and they direct and control the operations of HLE from that place of business. There is no doubt that Florida, and not California, is HLE's principal place of business. (*See* Declaration of John Concepcion ["Concepcion Decl."] ¶ 3 attached hereto as **Exhibit C**. Thus, Plaintiff and Defendant are "citizens of different States" under 28 U.S.C. § 1332(a); *see also*, *Hertz Corp. v. Friend,* 130 S. Ct. 1181 (2010) (court clarified that state where corporate headquarters is located is the state where it maintains its principal place of business).

10. Diversity of citizenship exists between the parties on the grounds that the citizenship of defendant Doan should be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1332, because Doan is a "sham" defendant, in that it is impossible for Plaintiff to establish liability against her.[2] *See Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067-68 (9th Cir. 2001) ("Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *McCabe v. General Foods Corp.*, 811

---

[2] As noted above, Doan has not been served in this case.

4

F.2d 1336, 1339 (9th Cir. 1987) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent").

11.     With regard to Doan, Plaintiff has only alleged two claims against her: (1) the 10th claim for wrongful termination in violation of Labor Code § 1102.5; and (2) the 12th claim for intentional infliction of emotional distress.  Both claims are not actionable against Doan as an individual defendant.

12.     First, Plaintiff cannot maintain her 10th claim for wrongful termination against Doan because that claim has no merit as a matter of law.  A claim under Labor Code Section 1102.5 is only actionable against a plaintiff's "employer" and may not be maintained against an individual supervisor, like Doan.  *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017) (granting motion to dismiss individual employees sued under Section 1102.5 because "there can be no individual liability under section 1102.5").  Because Doan was an individual supervisor and was not Plaintiff's employer, Plaintiff cannot maintain a claim against Doan under Section 1102.5.  (Concepcion Decl. at ¶ 5.)

13.     Second, Plaintiff's 12th claim for intentional infliction of emotional distress also may not be maintained against an individual supervisor like Doan.  That is because there can be no individual liability based on the allegations in the Complaint.  The Complaint identifies Doan as Plaintiff's supervisor and manager.  (Exhibit A at ¶ 5).  As the California Supreme Court stated in *Reno v. Baird,* 18 Cal. 4th 640, 646-47, 76 Cal.Rptr.2d 499 (1998), supervisors and managers should not be held personally liable for making personnel decisions because "[m]aking personnel decisions is an **inherent and unavoidable** part of the supervisory function.  Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties." *Id.* at 646.  (Emphasis added.)  The court further explained:

5

> We do not decide merely whether individuals should be held liable for their wrongdoing, **but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision**. Litigation is expensive, for the innocent as well as the wrongdoer. **By limiting the threat of lawsuits to the employer itself**, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals.

*Id.* at 663 (emphasis added). As a result, the court in *Reno* held that "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts" because individual supervisors cannot easily avoid liability when making "necessary personnel management actions **such as hiring and firing**." *Id*. at 646-47 (emphasis added). Indeed, there is a rebuttable presumption that an "employer" under FEHA includes only the entity identified as the employer on the employee's Federal Form W-2 (Wage and Tax Statement). Cal. Gov't Code § 12928. Doan, however, was never named on Plaintiff's W-2 statements as her employer. (Concepcion Decl. at ¶ 5.) At all relevant times, Doan was Plaintiff's supervisor and the Area Manager of HLE's Fullerton location. Doan, like Plaintiff, was employed by HLE, and both received their paychecks from HLE, with HLE listed as the sole employer. (*Id.*) Doan therefore never employed Plaintiff; she was only her supervisor.

14. The holding in *Reno* has been expressly applied to bar claims of intentional infliction of emotional distress against individual supervisors for making personnel decisions. *Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 80, 53 Cal.Rptr.2d 741 (1996) (intentional infliction of emotional distress claim may <u>not</u> be brought against individual defendants). As stated by the court in *Janken*:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and

6

> prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

*Id*. The holding in *Janken* was expressly approved by the court in *Reno,* which disallowed all claims against individual supervisors and managers under common laws theories of liability: "It would be *absurd* to forbid a plaintiff to sue a supervisor under the [FEHA], then allow essentially **the same action under a different rubric**." *Reno, supra,* 18 Cal.4th at 664 (emphasis added).

15. The allegations in the Complaint describe only actions by Doan that would constitute personnel management decisions. The Complaint includes the following allegations regarding Doan:

a. Plaintiff alleges that Doan was "Plaintiff's employer, manager, corporate agent, supervisor" who "dictated Plaintiff's compensation and had plenary ability to supervise, manage, hire, and fire, and did participate in the hiring and firing of Plaintiff." (Exhibit A at ¶ 5.)

b. Plaintiff alleges that Doan treated Plaintiff with increased hostility and in a manner to impede her ability to carry out her job duties after Plaintiff notified Doan of her pregnancy, such as by reassigning employees working under Plaintiff to other HLE locations. (*Id*. at ¶¶ 22-23.) Plaintiff further alleges that she complained to Doan that Doan's action left Plaintiff understaffed and that Plaintiff could not properly manage the location without the staff members that had been previously reassigned, and that Plaintiff could not perform her job duties due to her pregnancy. (*Id*. at ¶ 25, 28-30.) She alleges that Doan was dismissive of complaints and that she made denigrating comments to Plaintiff. (*Id*. at ¶ 31-34.) She further alleges that Doan continued to reassign her staff members to other HLE locations, even though she was in pain and needed

7

assistance from those staff members.  (*Id*. at ¶ 35-40.)

c.    Plaintiff also alleges that Doan's reassignments caused Plaintiff to suffer profound stress, anxiety, nervousness, and general emotional distress. (*Id*. at ¶ 41.)  She alleges that in response to Plaintiff's protest of Doan's conduct of removing Plaintiff's staff, Doan began accusing Plaintiff of not being a team player and allegedly berated Plaintiff for her purported failure to cooperate.  (*Id*. at ¶ 42-43.)

d.    Plaintiff alleges that on May 8, 2019, she requested a medical leave for her pregnancy but Doan allegedly restricted her leave to 10 weeks.  (*Id*. at ¶ 47-48.) Plaintiff further alleges that the next day, Doan accused Plaintiff of fraudulent conduct and placed her on a two week suspension during which a sham investigation was allegedly conducted.  She alleges that her employment was then terminated on May 24, 2019 before she could commence her medical leave.  (*Id*. at ¶ 49-52.)

16.   Plaintiff's allegations regarding Doan only pertain to personnel management decisions -- *i.e*., reassigning employees working under Plaintiff to other HLE locations, writing up Plaintiff's performance, determining how much leave she could take initially, and the termination of Plaintiff's employment.  All of her alleged actions were decisions that were an "inherent and unavoidable" part of her supervisory function as an Area Manager.

> We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, **job or project assignments**, **office or work station assignments**, promotion or demotion, **performance evaluations**, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, **deciding who will be laid off, and the like**, do not come within the meaning of harassment.  These are actions of a type necessary to carry out the duties of business and personnel management.

*Reno, supra,* at 646-47 (emphasis added). Accordingly, and as a matter of law, Plaintiff may not maintain her 12th claim for intentional infliction of emotional distress against Doan.

17. Because Plaintiff cannot maintain either of her claims against Doan, Doan may be disregarded for purposes of determining diversity of citizenship for purposes of removal. As such, there is complete diversity of citizenship between the parties and removal is proper.

18. Additionally, the defendants designated as Does 1 through 20 in the Complaint are fictitious defendants. Thus, they are not parties to this action. Unnamed defendants, such as Doe defendants, are not required to join in a removal petition. The Court disregards their citizenship for purposes of determining diversity. 28 U.S.C. § 1441(a); *Fristos v. Reynolds Metal Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

## Amount in Controversy

19. Removal jurisdiction exists where original jurisdiction would also have existed, and the removing defendant bears the burden of establishing jurisdiction. 28 U.S.C. § 1441(a); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). If a complaint on its face alleges that the amount in controversy exceeds the minimum required to invoke diversity jurisdiction ($75,000), and all of the other requirements for diversity jurisdiction are met, the action is removable. 28 U.S.C. § 1332. The court may, for removal purposes, look to the removal papers for underlying facts establishing the jurisdictional limit. *Gaus, supra*, 980 F.2d at 566 (9th Cir. 1992). If the allegations in a complaint do not conclusively demonstrate that the amount in controversy exceeds the jurisdictional minimum, the removing party need only demonstrate by a preponderance of the evidence that the jurisdictional minimum amount is in controversy. *Singer v. State Farm Mutual*

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)

*Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

20.    Defendant denies that Plaintiff is entitled to any recovery in this action, and by filing this Notice of Removal, Defendant does not waive any defenses that may otherwise be available to it.  Without waiving this position, and in light of the allegations of Plaintiff's Complaint, the amount in dispute in this matter exceeds $75,000 exclusive of interest and costs.  Plaintiff was a full-time employee who was paid an annual salary in amount of $51,920.18 at the time that her employment was terminated.  (Concepcion Decl. at ¶ 4.)  She was hired in February 2014 and her employment was terminated on or about May 24, 2019. (Concepcion Decl. at ¶ 4; Exhibit A. at ¶¶ 19 and 52.)

21.    Although Plaintiff's Complaint does not state a specific dollar amount of damages that she seeks, she alleges 12 claims related to her employment and the termination of her employment.  Generally, she seeks general and special damages together with prejudgment interest, punitive damages, and attorneys' fees.  (*See* **Exhibit A**, Prayer for Relief in Complaint at p. 30.)  Specifically, Plaintiff seeks recovery of "past and future lost wages."  (Exhibit A at ¶¶ 57, 58, 158.)  Past and future lost wages may be considered when evaluating the amount in controversy for purposes of diversity jurisdiction in a removed case.  *James v. Childtime Childcare, Inc.*, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June 1, 2007) ("The court evaluates the amount in controversy at the time of removal, **but it may consider both past and future lost wages**.") (emphasis added; *citing Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006).  In *Kroske,* the Ninth Circuit affirmed the district court's finding that the amount in controversy for a case removed to federal court would exceed $75,000 where the district court's calculation relied on both past and future wages.  *Kroske, supra,* 432 F.3d at 980.  Indeed, other district courts in California

10

have "projected lost wages through trial to determine whether the jurisdictional amount in controversy has been met" for cases removed to federal court based on diversity jurisdiction. *Thompson v. Big Lot Stores, Inc.*, 2017 WL 590261, at *3 (E.D. Cal. Feb. 13, 2017) (district court affirmed removal diversity jurisdiction based on past lost wages and projected future lost wages through trial); *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4894307, at *2-4 (E.D. Cal Sept. 11, 2013) (district court affirmed removal diversity jurisdiction based on past lost wages and projected future lost wages through trial); *see also James, supra*, at *2 & n.1 (court considered future lost wages in determining the amount in controversy for purposes of removal based on diversity jurisdiction). Those holdings were recently affirmed by the Ninth Circuit in *Chavez v. JP Morgan Chase & Co,* 888 F.3d 413, 417 (9th Cir. 2018), which stated: "That the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez, supra,* 888 F.3d at 417 (emphasis in original). The court in *Chavez* further stated: "Where, as here, a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future wages are included in the amount in controversy."

22.    Plaintiff's claimed lost wages projected through a likely trial date are enough by themselves to meet the amount in controversy requirement for removal of this case. Reasonably projecting a trial date that is more likely than not to occur in one year, or May 2021, Plaintiff's lost wages for two years (*i.e.,* from her termination date in May 2019 to a likely trial date in May 2021) would be approximately $103,840.36 (her annual salary of $51,920.18 multiplied by two years equals $103,840.36). In other words, based solely on Plaintiff's claim for lost wages through the expected date of trial, the amount in controversy already exceeds the threshold amount of $75,000 by $28,840.36, without accounting for

11

any additional damages that she seeks. But her lost wages are not the only claims that Plaintiff seeks to recover in the Complaint.

23. Plaintiff also claims that she has suffered emotional distress damages as a result of Defendant's actions. (*See* Exhibit A, Prayer for Relief at ¶ 2.) Emotional distress damages may be considered when calculating the amount in controversy even when not clearly pled in the Complaint. *Simmons v. PCR Tech.,* 209 F.Supp.2d. 1029, 1034 (N.D.Cal. 2002); *Richmond v. Allstate, Ins. Co.*, 897 F.Supp. 447, 450 (S.D.Cal. 1995) ("the vagueness of plaintiff's pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial"). Conservatively speaking, it is more likely than not that Plaintiff's emotional distress damages would equal at least one-half of her economic damages or $51,920.18 -- *i.e.,* $51,920.18 is one-half of $103,840.36. To that end, Defendant highlights jury verdicts from cases with similar causes of action where substantial emotional distress damages were awarded. *See, e.g., See, e.g., Juarez v. Autozone Stores Inc.*, JVR No. 1412040011, 2014 WL 7017660 (S.D.Cal.) ($250,000 pain and suffering award arising out of claims for discrimination and harassment based on pregnancy and gender, as well as retaliation, wrongful termination, and failure to prevent discrimination and harassment where plaintiff was asked to step down as the store manager during her pregnancy and again after her son was born, was then demoted to parts sales manager with a pay decrease yet was still required to perform store manager duties, and was later terminated for refusing to participate in what she believed was an illegal interrogation by the loss prevention team, which she asserted was a pretext to terminate her); *Viveros vs. Donahoe*, 13 Trials Digest 16th 9, 2012 WL 7854374 (C.D.Cal.) ($225,000 emotional distress damages award arising out of pregnancy discrimination claim where Plaintiff, a letter carrier, disclosed to her manager that she was diagnosed with a high-risk pregnancy while in Mexico and

12

was confined to total bed rest, but her manager immediately sought her termination and started sending her critical job notices at her Los Angeles apartment, knowing that she was in Mexico and unable to receive or respond to job notices); and *Restivo v. Home Depot Corp.*, JVR No. 805376, 1997 WL 34504321 (N.D.Cal.) ($472,800 pain and suffering award arising out of disability discrimination and retaliation claim, where plaintiff alleged that defendant home improvement company failed to accommodate her disability, retaliated against her when she complained of the discrimination, demoted her, and subsequently wrongfully terminated her employment in retaliation for her complaints).

24. Plaintiff also seeks punitive damages in her Complaint. A determination of the amount in controversy may include punitive damages when they are recoverable as a matter of law. *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir.2001); *Miller v. Michigan Millers Ins. Co.,* 1997 WL 136242, *4 (N.D.Cal.1997); *Richmond v. Allstate Ins. Co.,* 897 F.Supp. 447, 450 (S.D.Cal.1995). Plaintiff's action is brought pursuant to the FEHA. Punitive damages are available under FEHA. Cal. Gov't Code § 12940. Accordingly, the court may consider punitive damages when determining the amount in controversy. To that end, Defendant highlights jury verdicts from cases with similar causes of action where substantial punitive damages were awarded. *See e.g., Prasad v. University of Cal. Davis Med. Ctr.,* JVR No. 802857 ($60,000 punitive damage award); *Carrol v. Interstate Brands Corp. dba Wonderbread, dba Hostess & dba Dolly Madison, et al.,* Cal.Super.Ct. For the County of San Francisco Case No. 995728, 1 C.E.L.M. 68 (Sept.2000) ($121,000,000 punitive damage award); *Lane v. Hughes Aircraft Co.,* JVR No. 801112 ($40,000,000 punitive damage award). The fact that the cited cases involve distinguishable facts is not dispositive. Notwithstanding these differences, the jury verdicts in those cases amply demonstrate the potential for large punitive damage awards in employment

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)

discrimination cases.  Although the alleged facts of the instant action are far less egregious, Defendant has met its burden of showing by a preponderance of the evidence that the amount in controversy should include a punitive damages award.

25.    Finally, Plaintiff is claiming attorneys' fees in connection with her claims under FEHA.  "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998).  "When assessing the amount in controversy, the court considers the amount of attorneys' fees to be accrued throughout the entirety of the litigation."  *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) (citing *Simmons v. PCR Technology,* 209 F.Supp.2d 1029, 1034 (N.D.Cal.2002)).  *See also*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015); *Garcia v. ACE Cash Express, Inc.,* 2014 WL 2468344, at *5 (C.D.Cal. May 30, 2014).  "The Court can use its discretion to determine, within its own experience, that an award of attorneys' fees alone will satisfy the amount in controversy requirement.  'Even a minimal award of attorney's fees would cause the amount in controversy to exceed the jurisdictional minimum.'"  *Cain*, 890 F. Supp. 2d at 1250 (quoting *Haase v. Aerodynamics Inc.,* 2009 WL 3368519, at *5 (E.D.Cal.2009)).  Furthermore, courts routinely award attorneys' fees well over $75,000 in cases such as this one.

26.    Thus, the amount in dispute in this case is well in excess of the jurisdictional minimum of $75,000.  Based on the conservative figures above, Plaintiff is claiming at the very least **$155,760.54** in economic losses (*i.e.,* $103,840.36 in lost wages $51,920.18 in emotional distress), plus additional punitive damages as well as attorney's fees incurred through the remainder of the litigation.  Given the claims and allegations in this case, if Plaintiff prevails at trial, it is more likely than not that her damages will exceed the jurisdictional minimum

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)

identified in 28 U.S.C. § 1332(a). *Chavez, supra,* 888 F.3d at 418 ("In sum, the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.")

27. Based on the foregoing, Defendant plainly has carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum of $75,000.

28. For these reasons, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. section 1332, and which may be removed by Defendant to this Court pursuant to 28 U.S.C. section 1441(a). It is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. It also is between citizens of different states.

## Venue

29. Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 84(c)(3) and 1441(a) because this Court's territorial jurisdiction includes Orange County, California, where the state court action was filed and is pending.

///
///
///
///
///
///
///
///
///
///
///
///

30. For all of the foregoing reasons, Defendant respectfully submits that the State Court Action is removable to this Court under 28 U.S.C. §§ 1332(a) and 1441(b).

WHEREFORE, Defendant prays that this action stand and remain removed from the Superior Court to this Court.

Dated: April 10, 2020

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

By: _____
      Richard E. Bromley
      Jeffrey E. Fields
      Attorneys for Defendant
      HERTZ LOCAL EDITION
      CORPORATION.

16